We will now have the last argument on the calendar for this morning. That is United States v. Cherry. Thank you. Thank you. So, Mr. Garber, you have ten minutes, but you've reserved three minutes for rebuttal, so that gives you seven minutes now. Thank you. The floor is yours. Okay. Shifting to criminal stuff, I guess. I guess that's right. So, Glenn Garber for Appellant Eric Cherry. This is a motion for compassionate release, or at least I'm challenging the denial of it. And I'm sure the Court's been overloaded with a lot of these, but I think this case is unique and meritorious for a variety of reasons. So the case does not, there's really no dispute that extraordinary and compelling reasons for compassionate release, and here home confinement, apply under Section 18 U.S.C. 3582. Judge McMahon acknowledges that this is a case where it very well may apply. That's the way she phrases, I think, what is her concession, that I meet that grade. And in this case, I mean, it's clear, and I'm just going to sweep through it, ulcerative colitis, internal bleeding, terrible pain, he's immune compromised. I think we get all that, and certainly Judge McMahon was not oblivious to it. She understood the condition. And in fact, she recommended that Mr. Cherry be designated to the facility that he ultimately was designated to. So, I mean, she recommended what you asked for, and that's what BOP did, right? Well- FMC Devins. At sentencing. At sentencing, right. Okay, but then, and I did ask for, I asked for Butner, and then the mitigation specialist suggested Devins, and he went to Devins, but the motion does not focus- Well, the vote was designated to Butner and then Devins, but those were both FMCs that were requested in the sentencing submissions, right? That was July, and then his condition got much worse, and it was in December of 2020, four and a half months later, that we argue that the BOP cannot effectively care for him. He's in Brooklyn Hospital, he's been there since March, and this is where he should stay, or he should get home confinement and be in the area where he could have access to those doctors- No, I get all that. Because the BOP, so the abuse of discretion focuses on two things. First of all, it's compassion, because he's dying and he's bedridden, and this is the right thing to do, but within that box, two things. First of all, we put in a letter from his doctor, from Brooklyn Hospital, who knew him even before his arrest and had been treating him throughout his stay when he was in BOP custody, pre-sentence and post-sentence, and he said that this is a volatile situation where his life is in a very precarious situation, and sending him to another place is extremely risky given the nature of his condition. That was what we started with. And then what happens is Dr. Kazan, who is from Devens, writes a letter, all he does is read Dr. Fenves, the treating physician's letter, doesn't look at his medical records, doesn't contact any doctors in Brooklyn Hospital, and certainly Dr. Fenves, who's in charge of his care, and says, oh, we can treat him. That's it. Okay? And that is really what I'm arguing is abuse of discretion, because the court then just accepts this essentially uninformed decision from the BOP doctor and say, we can care for this guy. And her decision, it's not that he's not dying or that he may be dying, not that he's not in terrible shape, but that BOP can care for him, critical to that analysis, to the analysis. And she doesn't go down the step of even calling Dr. Fenves in. We invited him to come in and talk. And nothing about, there's nothing substantive, in my opinion, on what Kazan says, the BOP doctor, that should give the court any comfort that BOP can care for this man who is in terrible shape. So that's one abuse of discretion that I focus on. Is that abuse of discretion, or do we have to make a determination that she made a clearly erroneous finding that the Bureau of Prisons would be able to address his problems based on the factual submissions? I'm not sure, because the burden gets a little confusing to me here, because we come forward and say, you know, he's in terrible shape and his doctor says he shouldn't go there, and they say we can care for him. So I don't know. But- We have an abuse of discretion for the district judge to credit a letter from the treating physician at the Bureau of Prisons, so we would have to say, I think what you just articulated, which is that what he says can't possibly be true. Isn't that your argument? Well, I don't know if what he says can't possibly be true, that there's not enough information to make the determination that we just have to accept it. Oh, I see. So you're saying it's an abuse of discretion because she shouldn't have made the determination based on that record, but should have had a hearing or something? Well, absolutely. And we put forward together better proof from the treating physician, and their doctor, like I said, doesn't even review the record and just says, oh, we're a great institution, basically. We can take care of this. That, on this record, is not enough. I mean, what you're saying is that there's a contest of the amount of proof that both sides have put forward. I mean, isn't that usually the kind of thing that we leave to discretion of district court? Well, if a court makes a decision without sufficient foundation, I would say it's abuse of discretion, and it's clearly erroneous. I think it falls on both, whatever the standard might be. And I know it's an uphill battle. I know the burden is on me. And you said a moment ago that your client is at Brooklyn Hospital, even though he's confined at FMC Devins, and you want it to be at home confinement, but then also go to Brooklyn Hospital as needed. No. Doesn't that mean he's going to be treated the same way in either scenario, which is he would have access to the physicians at Brooklyn Hospital? He was transferred to Devins, and he wasn't in Brooklyn Hospital after a period of... So I'm hoping... I'm sorry. Maybe I misunderstood. Yeah. No, I'm saying he should stay at Brooklyn Hospital, and then if he becomes okay enough to be in a hospice-type setting, he should go to a hospice, and then he should be cared for for his daughter, who would be caring for him in a bedridden situation. And that's what I'm asking for. And that's the compassionate part of this compassionate release. And because there's not adequate proof that BOP can care for him effectively, that's the right course here. Now, the other abuse of discretion point that I raise is the 3553A factors. And the key one was that he's got a violent... It's a violent case, no question. He's got a violent history, but he's bedridden, and what Dr. Fenvey says is essentially the best he's going to be able to do is to get up and go to the bathroom. I don't see it likely that he's ever going to be out on the street again, and he could be dead in five years. And this is in December of 2020, or January of 2021. So the judge says, and the quote is, if he appreciably recovers, then... What she says is, I mean, she has this whole paragraph talking about his criminal history. And at the very end, she says, well, Jerry's medical condition is severe. There is no reason to believe that if he recovers appreciably, he will turn away from his lifelong involvement in violent crime. Isn't that a big if? If he recovers... It is a big if, but actually my question is, is that really a finding that he's going to recover appreciably? I mean, since it comes at the end of a paragraph that just recounts his history, maybe it's just a sentence that says, that's just evaluating his history and characteristics and deciding that he's unrepentant about his criminal history. I mean, is it really... She doesn't say, I think he's going to return to violent crime, and therefore we need to deter his conduct. She just says, there's no indication that he wants to turn away from his history of violent crime, but for the fact that he has a severe medical condition. And that might just be an examination of his history and characteristics. Might it not be? Well, it could be. But if the court doesn't go to that place and say, look, I'm not going to release him because he's a danger to the community. If he can't be a danger to the community, because... That's what I'm saying. He doesn't say, she doesn't say he's a danger to the community. He says, he did all of these things. The paragraph, that paragraph involves like a recounting of all of his criminal history. Like he was continually involved in crimes. But what's the... And says that there's no indication, but for his medical condition, that he wants to turn away from his lifelong involvement in violent crime. That seems like it's just talking about his criminal history in the background. Even if it's true, and it's just like, let's say that phrase isn't even in there. There's no... The whole discussion about his violent crime and the bad 35538 factors for a criminal defendant is that this guy is a violent criminal who shouldn't be out on the street. And he's a danger... Well, it's a combination of things. It's the seriousness of the offense, right? It's his risk of recidivism. It's his lack of remorse. I mean, there are a number of different factors that it might be relevant to, wouldn't you say? Well, in a regular case, but in a case where somebody... I mean, let's just say the guy's dying in bed and he can't get up other than to go to the bathroom. If he is... This is a terrible case. He's not remorseful. He's an awful human being. He's got all these bad things in his history. Wouldn't a court still have to say, yeah, but this guy is dying and it's not safe for him to go to Devins. And the whole idea that he's going to go out on the street and be a problem is not a real thing. The district court considers that, but also considers the need for the sentence to reflect the seriousness of the offense, right? You consider both of the things. But how can that be, the seriousness of the offense, an overriding factor in a compassionate release motion when somebody is as bad as I'm saying he is? You're basically saying, well, then the court can say, you know what? Mr. Garber, I mean, I think your logic would suggest that anybody who is dying gets compassionate release. No. I'm saying anyone who's dying and can't be effectively cared for by the BOP gets a bed... Gets to go to bed in a... With home confinement in a location that's close to his multidisciplinary team of doctors. That or, relatively, the court has to at least drill down on that to make sure that she's making a fair and effective decision, that that's not the case. So... One of the things that's frustrating about these cases is we're now talking about a snapshot in time that was some time ago, and there's a whole life that's been lived since this was litigated below, and we don't know what it was. If we were to affirm, is there any reason why, if history has proven that the facility where he's currently incarcerated isn't effectively treating his condition? Is there anything that would prevent him from filing a new petition for compassionate release, bringing in that evidence and saying, they said they could handle everything, but in fact here's what reality has shown us, or is this his one shot? Well, I thought about that a lot, like you're in this weird position. So yes, I could bring another motion, but I don't want to be on my back heels in another motion and I think something unfair happened here, and I don't want to get stuck with some law of the case problem. They're basically saying, we need a fly on the wall in Devens to watch a patient almost identical to Eric Cherry, and then come in with proof and say, they can't care for him. We can never do that. All I can do is get a letter from his doctor that goes through all this and explains it the way I did, and they don't rebut it sufficiently. So I would think, if you're going to, I would hope, you would remand it and say, look, judge, it's a moving target here. We don't feel that you looked at this as closely as you had to be able to find that the three, five, three, three, three, five, three, eight factors override the severity of his condition and the question mark about BOP not being able to care for him. And we ask you to look at it with a better focus, with more facts, and get the BOP records and see where the guy is at right now. And I can tell you, he's having a really rough time. I mean, that's not part of your record, but it's awful what's going on. He keeps going back and forth to facilities, and they're not taking him in a timely fashion. And I may be able to make a case that Devens can't, with new information, care for him effectively. But I don't want to be on my heels without being able to at least get a better, fairer view from Judge McMahon on this. Okay, well you've got three minutes for rebuttal. We'll hear now from Mr. Davis. Thank you, Your Honor, and may it please the court. My name is Peter Davis. I'm an assistant United States attorney for the Southern District of New York. I represent the United States on this appeal, and I also represented the United States in the proceedings below. The district court acted well within its discretion when it denied the defendant's motion for a sentencing reduction. First, the district court correctly found that FMC Devens was ready, willing, and able to care for this defendant, and that the defendant's medical condition did not require a sentencing reduction. And on this score, it's important to note that the defendant's own mitigation specialist, prior to sentencing, identified FMC Devens as one of the BOP facilities that was capable of responding to Mr. Cherry's needs. One of the things that I was puzzling over is the BOP says, in this facility, we can handle the full gamut of medical problems. But we have a letter from his treating provider that says, by the way, he's actually undergone an investigational, an experimental procedure, meaning it's something that by definition is not standard of care. It's not within the competence of even really good doctors around the country because of its investigational nature. Was the trial court obligated in a minimum to do some inquiry to figure out whether Devens had the capacity to follow up on this investigational procedure, which goes beyond the normal standard? So, Your Honor, I think that what we know in the record is that Dr. Kazin reviewed that letter from his treating physician, Mr. Fenves. And that letter from Mr. Fenves included the detail that we have been talking about today, which is detail about Mr. Cherry's condition. Detail, I think, about even this experimental procedure. But doesn't he say, I can't really address the inmate in particular, I can only give you an overview of our general ability to provide services? And that's absolutely true, and as part of that, I would say is, he's saying that he hasn't addressed, he hasn't examined Mr. Cherry in person, and he hasn't reviewed particular medical records. But he did review the treating physician's letter, and that letter does include extensive detail. But he's also saying that FMC Devins is a level four care facility for a reason. It has access to some of the best hospitals in the country, including Massachusetts General, for example. And to the extent there is some experimental procedure that is available in Brooklyn Hospital, my guess is that, and I think this is supported by the record in Dr. Kazin's letter, is that FMC Devins, and by nature the surrounding wonderful hospitals that they have access to, would also have access to it. But- What does that even mean that we have, and one of the things I was puzzling over, does that mean that by definition, every person who's being held in Devins, that's their go-to, or is this like they've done it once for somebody in the last ten years, and now they get to say they have access to these top tier hospitals? I mean, how do we even know? So your Honor, I don't know the answer to that. What I will say is, the way I'm thinking about it is the same way that Mr. Cherry, who was initially housed at MDC, ended up at Brooklyn Hospital prior to designation, right? The MDC was sent into Brooklyn Hospital to be treated, I would imagine FMC Devins, which is itself a medical facility, a level care, a level four care facility, needed to consult with an outside specialist, they would be able to send Mr. Cherry there. And so that's how I understand it, Your Honor. But separately and independently from the point about FMC Devins, is the district court correctly found that Section 3553A factors militated against a sentencing reduction for this defendant. And on this point, the record is clear that the defendant had a violent and extensive criminal history. And that included him conducting this gunpoint robbery a month after being treated for the very illness that he says is the basis for a sentencing reduction here. The record amply supports that finding. That is well within the district court's discretion to deny a sentencing reduction on that grounds. Well, if it were true that what opposing counsel says, which is that FMC Devins is unable to treat his condition, would that automatically override the 3553A factors? I think that was his position. No, Your Honor, I respectfully think not. I think the Section 3553A factors incorporate a number of ideas that the court can look at, and the court listed them before addressing Mr. Cherry's criminal history. And so, among the other things that the court is considering when addressing those factors is the need for just punishment. Look, 3553A includes the need to provide the defendant with needed medical care. That's one of the factors, right? Of course, Your Honor. And so, if we're operating in a different world where the record did not support the finding that the court made, I believe the court may have rebalanced them. But here, the record certainly supported that Mr. Cherry was- But I guess my question is this, so let's, I mean, I assume that, I know that you're saying this is not the case here. Yeah. But if it were the case that we knew that the federal facility could not actually treat his condition, but the district court said, well, nevertheless, I think letting him out early would undermine respect for the law or not provide adequate deterrence or not account for the seriousness of the offense. Would that be an acceptable decision? Would that be a permissible balance for a district court to draw? Your Honor, I think it's a highly fact-intensive decision. I believe that the court, it is a permissible decision for the district court to balance these factors in the way they find appropriate. And I think in a particular case, you can imagine a scenario where even if the defendant's, even in the hypothetical that you imagine, the court identifies certain other factors. And Your Honor, the answer to that is I don't know how the balancing would shake out under that hypothetical. But we don't have to answer that question today, given the record is on FMC. I guess, I mean, I guess what your opposing counsel said was that he thinks the evidence shows, at the very least, there's a very serious question as to whether the federal facility could provide adequate treatment. And you're saying, well, even if it's an extraordinary circumstance, the district judge said 3553 A factors overcame it. I guess my question is if that we really thought that the federal facility couldn't treat him, would it be permissible for a district court to say that other factors still outweighed the need to provide adequate treatment, is that an acceptable balance for a district court to draw? You're saying it's a different case, but I mean, is that, but it could be this case. I mean, let's say we were persuaded that there was evidence suggesting the federal facility couldn't account for him. And yet, we think the district court still said that other factors weighed against a sentence reduction. Would that be a permissible balancing? I still think the answer is I don't know how the balancing would play out in that case. But I think here, where you have ample evidence of FMC Devon's ability to care for this defendant, we're just not in a situation where the district court's finding on that is clearly erroneous. But I mean, the case law doesn't require federal medical centers to be at least as good as the best private facility on the planet, right? That's correct, Your Honor. I would imagine that that's correct. And here, we're well within the range of reasonableness here. It's a level four care facility. The evidence in the records fully supports Judge McMahon's finding. And for that reason, Your Honor, the court did not abuse its discretion. And if we affirm, I take it you agree as well, that if all this history that's taken place, that you all may know about, but we don't, provides new evidence as to either his current condition, or the ability of the Bureau of Prisons to provide the care for him, that there's nothing that would preclude him from bringing a new compassionate release motion describing the changed circumstances for the new evidence. Yes, Your Honor, beyond the exhaustion requirements, I believe that's correct. Is that the process would be that the defendant could reapply anew. Did the district court decide that there was a need to provide deterrence because he was going to recover appreciably? Your Honor, I think that the district court cited all the 3553 F factors before addressing that paragraph. And as the court recognized, a lot of these, the items that the district court noted, apply to multiple factors. I think here, where you're faced with a question about predicting the future about this defendant, I think the treating physician himself said that his condition's unpredictable. But one thing that the district court is permitted to look at is the defendant's criminal history. And the history shows that this defendant was not deterred by prior criminal sentences and criminal convictions. And was not even deterred by being treated for this serious medical illness. Indeed, he committed this offense about a month after being treated for this very illness. And about ten days after going a separate medical procedure, where he committed a gunpoint robbery. So having looked at that history, I think it's well within the district court's discretion to balance a number of 3553 F factors on that grounds. Unless the court has any further questions. Okay, thank you, Mr. Davis. Mr. Garber, you've got three minutes, everybody. Thank you. So, first of all, I don't think there's ample evidence that they can care for him. I mean, there's a void in this record on that fact. And- Well, the reply letter from Dr. Fenves, I'm not sure how to pronounce it, but doesn't really question as much the competence of the medical care that's at Devins. He really just basically says he's still not convinced or reassured that the care at Devins would be as effective as at Brooklyn Hospital Center. Well, not as, it's precarious to break the continuity of care is really what the thrust of, I think both of Dr. Fenves' letters say, is too dangerous in this situation. And Kazan's letter doesn't really address it. Doesn't address the fecal implant procedure that, by the way, failed and they had to do an alternative treatment. Doesn't get into anything specific about Mr. Cherry. And there's a failing there. Did the Brooklyn Hospital send him out to other hospitals during the course of treatment there? Well, they do, but he still has a group of doctors who are overseeing his care, and it's a constant monitoring situation. Right, but I mean, one of the other things that the BOP was told to arrange for was to have the Brooklyn Hospital doctors stay in touch with the Devins doctors, right? They can coordinate, they can work collaboratively. But doesn't Judge McMahon have to say, look, that should have happened before now. And that we should, I want some confidence that they're actually going to be able to care for this man who has this unique condition that's being cared for appropriately or as appropriately as it can be at Brooklyn Hospital. And there's a void here in light of this letter by Kazan that just says, we're level four, we're great. We don't know anything about this guy, but trust us, we're the BOP and we can cover it. That's essentially what it boils down to, and in this case, I think they had to do more. But to Judge Menashe's point about the, let's say a judge says, you know, I don't need all this medical crap here. The bottom line is this is a terrible case. This guy's a violent criminal, and I don't even need to go into this whole thing about he's dying, because I don't like the case, and I don't like the offender. And to me, the fact that this is, that he needs deterrence or just punishment is enough. Done. End of story. Let's not even go into that inquiry. I don't think a court can do that. Isn't that what happened in Madoff? What? Isn't that exactly what happened in Madoff? In Madoff? Madoff, yes. Madoff made a compassionate release motion, and it was denied by Judge Shin. He was dying. He asked to be allowed to die at home. And the court said, sorry, this crime is too serious. That the 3553A factors do not warrant compassionate release. Isn't that pretty analogous to the hypothetical that we're- You know, I'm not aware of that, and I'm sorry to not be focused on that case, but then I would say that's the Madoff exception, because there is no way, I mean, I think that a court, that would be a problem. Certainly in Cherry's case, and I think, or in almost every case, maybe except Madoff. But even in Madoff, it's not a very comforting legal paradigm. In your hypothetical, the way you just recounted it was that the district court would say, I don't care about his medical condition. I think there's a need for just punishment. I guess in my hypothetical, what if the district court said, well, I do look at his medical condition, and yet I think other factors outweigh it. I mean, the factors do call for the district court to balance the factors. So is it not possible to decide that the need for just punishment outweighs the need for better medical treatment at some other facility? Well, I mean, maybe the Madoff thing is a little too stark, but I think the court has to do a thorough and fair evaluation. So if they're going to do a balancing test, which is what they're supposed to do, you at least have to know what's on the other side. And even the way the judge phrases the medical part, she says, may very well be enough to satisfy 3582 for compassion relief. She doesn't drill down. Wait, wait, but that's in fairness. That's with respect to whether there's a compelling and extraordinary need. But the other requirement, of course, is that the 3553A factors support the release of this person. That seemed to me what Judge McMahon was saying. Assuming you can establish compelling and extraordinary need, you still have to get past 3553A, and in that case, according to Judge McMahon, he didn't. But don't they have to be balanced, the 3553A factors, in light of what that compelling circumstance is? And if the compelling circumstance is that Devens can't care for him, just to accept that fact for the sake of argument, then she may have abused her discretion here, especially when she's also entwining, I think, the 3553A factors with the fact that if he appreciably gets better, which there's no evidence that that will ever happen, then he's a threat to the community. I just think that for you to be comfortable that this was balanced effectively and that she made a correct decision, you need more. And that is why I don't want, and I'm urging Judge Robinson to not affirm, and everybody not to affirm, because I don't want to be in a situation where I'm going back on a fresh compassion release motion. I want to at least make some ground here, because I think it's logical what I'm saying. There was just not enough here, and we did more than enough with the Fenby's letter, and they didn't do enough with the Kazan letter. And there's just this gloss of discomfort over this dying man situation, and we're not convinced that Devens can do it, just to say it's a level four, and it's a great hospital, is just not enough at the end of the day here. So, something from the court that gives me a little bit of a leg up on my new compassion release motion, so I'm not losing ground here, I'm gaining ground. That's what I would like. I think it's a fair ask on this record, and thank you. All right, thank you, Mr. Garber, and Mr. Davis, and Mr. Richen. We will reserve decision. That concludes the oral argument portion of our calendar. We have one other case that is on submission. Before we adjourn court, I want to thank Ms. Beard and all the folks who make this court run so smoothly. I think today was a good example of that. So thank you all. Ms. Beard, you may adjourn the court. Court stays adjourned.